UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH PRACH,

       Plaintiff,                        Case No. 09-13756

v.                                     Honorable Patrick J. Duggan

HOLLYWOOD SUPERMARKET, INC.,

       Defendant.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 27, 2010.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Joseph Prach ("Plaintiff") filed this lawsuit on September 22, 2009, alleging violations of his rights under Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") by Hollywood Supermarket, Inc. ("Defendant"). On April 30, 2010, Defendant filed a motion for summary judgment. During the briefing on the motion, Plaintiff stipulated to the dismissal of his ELCRA claim. (*See* Pl.'s Resp. at 4 n.1.) The motion has now been fully briefed and the Court heard oral argument on August 26, 2010.

## I. Facts and Procedural Background

This case arises from Plaintiff's discharge from employment with Defendant, a grocery store, on September 8, 2007. Prior to his employment with Defendant, Plaintiff, a Seventh

Day Adventist, worked for Farmer Jack for approximately eight years as a part-time produce clerk, register clerk, and service desk clerk. (Pl.'s Dep. at 8, 12-13.) During those eight years, Plaintiff never worked on Saturdays. (*Id.* at 16.) In the summer of 2007, Farmer Jack exited the Michigan market and Defendant acquired several Farmer Jack stores, including the one where Plaintiff worked in Madison Heights, Michigan. (*See id.* at 19.)

That summer Plaintiff interviewed and submitted a written application for employment with Defendant. (*Id.* at 22.) On his written application, Plaintiff indicated that he was unavailable for work on Saturdays. (Pl.'s Resp. Ex. 2.) During the interview, Plaintiff explained that he was unavailable to work on Saturdays because of religious reasons. (Pl.'s Dep. at 22-23.) Seventh Day Adventists observe the Sabbath from sunset on Friday until sunset on Saturday, at which time they are to refrain from working. (*Id.* at 14.) Defendant hired Plaintiff to work as a part-time produce clerk. One of Plaintiff's brothers, likewise a Seventh Day Adventist that had been working for Farmer Jack, also took a position with Defendant.

Preparing for the store's reopening, Defendant scheduled its employees, including Plaintiff and his brother, to work on Saturday, July 7, 2007. (*Id.* at 26; Def.'s Mot. Ex. E.) Plaintiff appeared for work that day despite his religious beliefs in the interest of keeping his job. (Pl.'s Dep. at 55.) That day, Plaintiff learned that another part-time employee in the produce department, Steve Krankota, preferred to work Saturdays rather than Sundays. (*Id.* at 37.) Together Plaintiff and Krankota reported their scheduling requests to the manager of the produce department, Kevin Abraham, who seemed to have no problems with scheduling

them according to their complementary requests.  (*Id.* at 37-38, 49-50.)

Less than a month later, however, Plaintiff was scheduled to work Saturday, August 4, 2007.  (*Id.* at 31.)  After working that Saturday shift, Plaintiff posted a note next to the produce department schedule indicating to Abraham that he did not want to work on Saturdays. (*Id.* at 35.)  Nonetheless Plaintiff was scheduled to work the following Saturday, August 11.  (*Id.* at 32.)  Plaintiff testified that, in all, he left Abraham four notes indicating his request to have Saturdays off.  (*Id.* at 32.)  Abraham denies receiving any of the notes but informed Plaintiff during a verbal conversation that he never promised Plaintiff or Krankota their requested schedules and that they could not keep switching shifts.  (*Id.* at 38-39; Abraham Dep. at 18-19, 21.)  Plaintiff worked his scheduled Saturdays in August to demonstrate his willingness to be reasonable with his request and to avoid getting fired.  (*Id.* at 55.)

Sometime during the month of August 2007, Defendant terminated a third part-time employee, Joe Hollewa, who had been working in the produce department.  (*See* Abraham Dep. at 18-19.)  This made scheduling more difficult and Abraham found that he could no longer meet the scheduling preferences of Plaintiff and Krankota.  (*Id.* at 29-30.)  As a result, Plaintiff was scheduled to work both Saturday, September 8, and Sunday, September 9, 2007. (Pl.'s Dep. at 41, 45-46.)

After punching in on Saturday, September 8, Plaintiff went to speak with Abraham regarding his request to have Saturdays off.  (*Id.* at 41-42.)  At that time, Plaintiff maintains that he informed Abraham that his request was based on his need to observe the Sabbath.  (*Id.*

at 42.)  After additional questioning by Abraham, Plaintiff claims to have stated, "If I don't stand for something, I'll fall for anything."  (*Id*.)  Abraham, meanwhile, denies that Plaintiff mentioned religion, explaining his request for Saturdays off only by stating, "If I don't stand up to be a man now, I never will be."  (Abraham Dep. at 24-26.)  In any event, Abraham sent Plaintiff to discuss the issue with the store manager, Mike Morin.  (*Id*. at 25; Pl.'s Dep. at 42.)

The same basic conversation unfolded between Plaintiff and Morin.  Plaintiff asserts that he informed Morin of his need to have Saturdays off for the Sabbath while Morin claims that Plaintiff stated, "if I don't stand up and be a man, I will never be one, and I am not working today."  (*Id*. at 44; Morin Dep. at 25-26.)  Although Plaintiff allegedly offered to work that night, Plaintiff maintains that Morin informed him he did not need to stay if he did not want to work.  (Pl.'s Dep. at 44.)  Morin, however, claims that he told Plaintiff that he would be considered a "voluntary quit" if he left the store without completing his shift. (Morin's Dep at 25-26.)  Either way, Plaintiff then punched out and went home for the evening.  (*Id*. at 26; Pl.'s Dep. at 44.)

Plaintiff returned to work, as scheduled, the next day.  (Pl.'s Dep. at 45.)  Before punching in, though, Plaintiff claims that Morin asked to speak with him in his office.  (*Id*. at 45-46.)  At that time, Plaintiff asserts that Morin terminated him "because of Saturday" and told him his brother was "next."[1]  (*Id*. at 45-47.)  Morin does not recall speaking to

---

[1]There are no allegations in this case that Plaintiff's brother was subjected to discrimination of any kind.

4

Plaintiff at any time after September 8, 2007. (Morin Dep. at 32.)

In regard to scheduling at the store, Defendant must abide by a collective bargaining agreement ("CBA") negotiated between Defendant and the Union that represents Defendant's employees (other than the store manager). (*See* Def.'s Mot. Ex. C.) That CBA requires that Defendant "post and maintain a current seniority list of employeees" and schedule employees in conformity with the agreement. (*Id.*) Among other things, the CBA requires that Defendant "recognize the wishes of senior employees' choice for days off and daily work schedules by seniority;" limits the amount of night shifts that Defendant may schedule for full-time employees in any given work week; demands that Saturday night work be rotated uniformly among full-time employees scheduled to work nights; makes clear that part-time employees are to be used only for "part-time, supplementary or fill-in purposes;" and generally relegates junior, part-time employees to the bottom of the priority list for scheduling purposes. (*Id.*)[2]

In setting out employee schedules for each week at Defendant's store, Abraham and Morin both testified that the process starts with the preferences of the most senior full-time employees and goes down the seniority list from there. (Abraham Dep. at 10-11; Morin Dep. at 19-20.) Based on the content of the CBA and the needs of the store, Abraham also testified that Defendant cannot guarantee part-time employees any particular day off during the work week. (Abraham Dep. at 15, 31-32, 45; *see also* Morin Dep. at 43.) As such,

---

[2]The same CBA governed the operations of the Farmer Jack store that preceded Defendant's operation. (*See* Pl.'s Dep. at 28-30.)

Abraham maintains that, even if Plaintiff presented his request for Saturdays off as a religious issue, Defendant would have been unable to accommodate him without significant difficulty. (Abraham Dep. at 33-36 .) Plaintiff, however, seeks to hold Defendant liable for terminating him and failing to accommodate his religious beliefs in violation of Title VII of the Civil Rights Act of 1964.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on

allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2).  To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient.  *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *Id.* at 255.  The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *Id.*

## III. Title VII Religious Accommodation Claims

Title VII of the Civil Rights Act of 1964, as amended in 1972, makes it unlawful for an employer to discriminate against an employee on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).  Specifically, the statute provides that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ."  *Id.*  The term "religion" as used within Title VII includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

"The obligation to accommodate includes efforts to accommodate those employees who refuse to work on particular days of the week because of their religious beliefs."  *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987).  An employer may choose any

reasonable accommodation in accommodating an employee's religious beliefs. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S. Ct. 367, 372 (1986). Even so, an employer need not sustain an undue hardship in accommodating an employee's religious beliefs and, in this context, "[t]o require an employer to bear more than a *de minimis* cost in order to accommodate . . . is an undue hardship." *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994) (citing *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84, 97 S. Ct. 2264 (1977)).

To succeed on this claim, Plaintiff must establish a prima facie case of religious discrimination. *Smith*, 827 F.2d at 1085. This requires Plaintiff to show that: "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Id.* Once Plaintiff establishes a prima facie case, the burden shifts to Defendant "to prove that it cannot reasonably accommodate the employee without incurring undue hardship." *Id.*

## A. Prima Facie Case

For purposes of the present motion only, Defendant does not challenge the first two elements of the prima facie case. (Def.'s Br. at 14.) Defendant asserts, however, that Plaintiff has not shown that he was discharged for failing to comply with an employment requirement that conflicted with his religious belief. In making this argument, Defendant refers to the facts that Plaintiff worked at least three Saturdays during his brief employment, that Defendant allowed Plaintiff to switch shifts with Krankota on other Saturdays, and that

members of Defendant's management uniformly maintain that Plaintiff voluntarily quit. Defendant's argument lacks merit.

Plaintiff's version of the events leading to the termination of his employment differs from that presented by Defendant. Plaintiff testified at his deposition that after he reported to work on Saturday, September 8, 2007, he informed both Abraham and Morin that he needed Saturdays off to observe his Sabbath. (Pl.'s Dep. at 42-43.) Morin reportedly responded that Plaintiff could leave if he did not want to work. (*Id.* at 44.) Plaintiff denies being told that leaving the store would be interpreted as a voluntary quit and, in fact, appeared the next day for his scheduled shift. (*Id.* at 45-46.) At that time, Plaintiff asserts that Morin fired him "because of Saturday" and indicated that his brother was "next." (*Id.* at 47.) Viewing this evidence in the light most favorable to Plaintiff, as this Court must for the present motion, Plaintiff has presented evidence sufficient to establish that he was discharged for failing to comply with an employment requirement that conflicted with his religious belief. Plaintiff has therefore established a prima facie case of religious discrimination.

## B. Reasonable Accommodations and Undue Hardships

With the prima facie case of discrimination established, the burden now shifts to Defendant to prove that it cannot reasonably accommodate Plaintiff without incurring an undue hardship. As to this issue, Defendant argues that any accommodation for Plaintiff would impose more than a *de minimus* cost and, therefore, result in an undue hardship. Specifically, Defendant maintains that guaranteeing Plaintiff Saturdays off would require that

it hire another employee, understaff the produce department, or require other employees to work Saturdays—and more specifically Saturday evenings—without regard to other employee preferences and possibly in violation of the CBA. Plaintiff responds that any undue hardship resulted from Defendant's termination of Hollewa, not Plaintiff's request for religious accommodation. Furthermore, Plaintiff asserts that Defendant's claims of undue hardship are merely speculative and that Defendant could have accommodated him by transferring an employee from another department. Plaintiff's arguments lack merit.[3]

Generally, the reasonableness of an accommodation is determined on a case-by-case basis according to the facts as they existed at the time of the plaintiff's employment. *Cooper*, 15 F.3d at 1378, 1380. As previously indicated, though, "Title VII does not require an employer to bear more than a *de minimis* cost in accommodating an employee's religious beliefs." *Id.* at 1380. This means that an employer cannot be required, among other things, to hire an additional worker or risk production losses. *Id.* Additionally, an employer's accommodation of one employee's religious beliefs should not be at the expense of other employees. *Hardison*, 432 U.S. at 85, 97 S. Ct. at 2277 ("[W]e will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath."); *see also Virts v. Consol. Freightways Corp. of Del.*, 285

---

[3]Plaintiff bases his arguments in large part on the Sixth Circuit holding in *Cummins v. Parker Seal Co.*, as reported at 516 F.2d 544 (6th Cir. 1975). The United States Supreme Court, however, later vacated that judgment and remanded the case to the Sixth Circuit for reconsideration in light of *Hardison*. 433 U.S. 903, 97 S. Ct. 2965 (1977). On remand, the Sixth Circuit reversed the opinion relied upon by Plaintiff, concluding that accommodation of the plaintiff in that case would result in an undue hardship to the defendant employer. 561 F.2d 658 (6th Cir. 1977).

F.3d 508, 521 (6th Cir. 2002).

In cases where they are present, such as in the instant case, CBAs with seniority-based systems for scheduling employees further limit employers' obligations to make religious accommodations. Title VII itself provides:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, . . . provided that such differences are not the result of an intention to discriminate because of . . . religion . . . .

42 U.S.C. § 2000e-2(h). Pursuant to this clause, employers are not required to engage in proposed accommodations that have the ability to violate a CBA by interfering with a valid seniority system.[4] *Virts*, 285 F.3d at 519; *see also Hardison*, 432 U.S. at 79, 82, 97 S. Ct. at 2274, 2276.

Under these guidelines, the proposed accommodations in this case all result in undue hardships to Defendant. Hiring an additional employee to accommodate Plaintiff clearly imposes more than a *de minimus* cost and Defendant cannot be required to leave the produce department understaffed or make transfers at the expense of other departments. *See Hardison*, 432 U.S. at 68-69, 97 S. Ct. at 2269 ("To leave the position empty would have impaired supply shop functions . . . ; to fill Hardison's position with a supervisor or an employee from another area would simply have undermanned another operation; and to

---

[4]There is no allegation that the seniority system imposed by the CBA in this case resulted from an intent to discriminate on the basis of religion.

11

employ someone not regularly assigned to work Saturdays would have required TWA to pay premium wages.").

Additionally, both Abraham and Morin testified at their depositions that part-time workers are not entitled to a regular day off and cannot override the scheduling preferences of full-time workers due to the CBA and seniority structure. (Abraham Dep. at 10-11, 15-16, 33-36; Morin Dep. at 11, 19-20, 45-47.) Without Plaintiff working Saturdays, however, Defendant would be required to assign employees to Saturdays involuntarily. Title VII imposes no such obligation. In fact, "[i]t would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others . . . ." *Hardison*, 432 U.S. at 81, 97 S. Ct. at 2275.

Plaintiff's complaint that Defendant created any undue hardship by terminating Hollewa similarly lacks merit. It is not that Defendant was unable to keep the produce department appropriately staffed upon Hollewa's termination; it is only that Defendant could no longer facilitate Plaintiff's request for Saturdays off without Hollewa's assistance. (*See* Abraham's Dep. at 39-40.) To require that Defendant retain Hollewa for Plaintiff's benefit, however, would be "to require [Defendant] to bear additional costs when no such costs are incurred to give other employees the days off that they want," resulting in "unequal treatment of employees on the basis of their religion." *Hardison*, 432 U.S. at 84; 97 S. Ct. at 2277. Once again, Title VII imposes no such obligation. *Id.*

Finally, summary judgment is not precluded by the fact that Defendant never actually experienced the undue hardships it claims it would have suffered had it accommodated Plaintiff. *Virts*, 285 F.3d at 519 ("[A]n employer does not have to actually experience the hardship in order for the hardship to be recognized as too great to be reasonable.") Where "Defendant's other employees [are] likely to be adversely affected by any accommodation," the employer's obligation to accommodate is excused. *Id.* at 521. Defendant's limited flexibility in staffing the produce department—resulting from the reduced number of part-time employees in the department and restrictions imposed by the CBA—supports Defendant's claims that any accommodation of Plaintiff's religious beliefs would result in an undue hardship on the business. *See Depriest v. Dep't of Human Servs.*, No. 86-5920, 1987 WL 44454 at *4 (6th Cir. 1987) (affirming judgment for the employer where, under the circumstances of the case, "the employer simply did not have much flexibility"); *see also Virts*, 285 F.3d at 519 ("[W]here any of Plaintiff's proposed accommodations had the ability of violating the collective bargaining agreement by interfering with the seniority system, Defendant was not required to accommodate Plaintiff."). Therefore, Defendant has satisfied its burden of proving that it cannot reasonably accommodate Plaintiff without incurring an undue hardship and Defendant is therefore entitled to summary judgment.

## IV. Conclusion

Although Plaintiff established a prima facie case of religious discrimination under Title VII, Defendant also met its burden of showing that it cannot reasonably accommodate Plaintiff without incurring undue hardship. All proposed accommodations in this case would

require Defendant to bear more than a *de minimus* cost or to discriminate against other employees on the basis of Plaintiff's religion.  Title VII imposes no such accommodation requirements.   Accordingly,

**IT IS ORDERED** that Hollywood Supermarket's motion for summary judgment is **GRANTED.**

A judgment consistent with this opinion shall issue.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies To:
Beth M. Rivers, Esq.
Kevin M. Carlson, Esq.
Andrew T. Baran, Esq.